UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE

LEXFIT, LLC                                                                                              CASE NO. 23-51167

DEBTOR

LEXFIT, LLC, *et al.*                                                                                    PLAINTIFFS

V.                                                                                                       ADV. NO. 23-5052

BOND STREET FUND 20, LLC, *et al.*                                                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER PARTIALLY
GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Bond Street Fund 20, LLC's ("Bond Street") Motion for Summary Judgment [ECF No. 23 ("Motion")] on its counterclaim against Plaintiff/Debtor LexFit, LLC ("Debtor") for breach of contract and its claim against Plaintiffs Royce and Tomi Anne Pulliam ("Guarantors") for performance on a guaranty agreement. Bond Street contends (a) it was not required to mitigate its damages, and (b) Debtors and Guarantors are each liable to Bond Street for a sum certain. Debtor and Guarantors filed a Joint Response in Opposition to the Motion. [ECF No. 42 ("Response").] Bond Street filed a Reply. [ECF No. 44.] At the Court's instruction, Bond Street also filed a supplemental affidavit regarding its damages calculation. [ECF No. 38.] Oral argument on the Motion is not necessary.

The Court agrees with Bond Street that Debtor and Guarantors may not assert a mitigation defense to Bond Street's claims against them based on the unambiguous terms of the parties' agreements. The Court also (a) concludes no genuine dispute of material fact exists that precludes a ruling on most aspects of Bond Street's damages claims, though its calculations need adjustment, and (b) requires more information about Bond Street's requested legal fees.

I.  **Factual and Procedural Background.**

Bond Street owns commercial real estate at 124 and 148 Malabu Drive in Lexington, Kentucky, having acquired its interest in July 2019 via an Assignment and Assumption Agreement. [ECF No. 23-2.] Bond Street's predecessor in interest, One Venue, LLC, entered into a Lease Agreement with Debtor on January 17, 2018, pursuant to which Debtor leased 9,127 rentable square feet in Suite 120/Building C (the "Property"). [ECF No. 38-1 at 2-52 (the "Lease Agreement").][1] Notably, Royce Pulliam (one of the Guarantors) signed the Lease Agreement as the "Manager" for both One Venue, LLC (as landlord) and for Debtor (as tenant).

Debtor and One Venue, LLC executed (a) a First Amendment to Lease Agreement on April 3, 2019, and (b) a Second Amendment to Lease Agreement on July 1, 2019. [*Id*. at 53-55, 56-60]. On April 28, 2020, after Bond Street acquired the Property and shortly after the start of the Covid pandemic, Bond Street and Debtor executed a "Rent Deferment Agreement." [ECF No. 38-3; the Lease Agreement, First and Second Amendments, and Rent Deferment Agreement collectively are referred to as the "Lease Documents."] Pertinent provisions of the Lease Documents are discussed below.

On July 1, 2019, the Guarantors guaranteed certain rent payments (the "Guaranteed Obligations") due from Debtor to the "Landlord" as defined in the Lease Documents [ECF No. 38-2 (the "Guaranty")]. Pertinent language of the Guaranty also is discussed below.[2]

---

[1] Debtor leased additional space at this location, which lease also was assigned to Bond Street, but Bond Street has elected not to pursue relief related to this lease in connection with this Motion.

[2] The Assignment and Assumption Agreement assigned Bond Street Debtor's Lease Agreement dated January 17, 2018, "as guaranteed by Guaranty dated July 1, 2019." [ECF No. 23-2.] The Guaranty states that, as to the Lease Agreement, the Guarantors guaranteed to "Landlord" (then One Venue, LLC) certain rent payments "and agree[d] that the Guaranteed Obligations and this Guaranty will remain in full force and effect without regard to any transfer by Landlord . . .of their interests in the Leases or the 'Premises' . . . ." [Guaranty at 1.] As the Guaranty "inure[d] to the benefit of Landlord, its successors and assigns," upon assignment of the leases, Bond Street obtained the ability to enforce the Guaranty. [*Id*. at 2.]

2

Debtor operated a group class-based boxing studio at the Property until March 2020, when the studio closed after the state government issued closure orders in response to the COVID-19 pandemic. [ECF No. 42-1 ¶¶ 11-13.] The parties entered into the Rent Deferment Agreement the following month and, from April to July 2020, Debtor made all payments due under the Lease Documents (as modified by the Rent Deferment Agreement). [*Id*. ¶¶ 21-23.]

After Debtor ceased making rent payments, Bond Street sent Debtor a demand letter requesting payment of past due rent and stating Debtor would be in default under the Lease Documents unless a payment was timely made. [ECF No. 42-17.] Additional correspondence [ECF Nos. 42-18, 42-19, 42-20] culminated in Bond Street's demand letter to Debtor's counsel on October 6, 2020, which both reiterated Debtor must pay rent due under the Lease Documents and made a demand upon the Guarantors under the Guaranty. [ECF No. 42-21.]

On October 23, 2020, Bond Street filed a Commercial Forcible Detainer Complaint against Debtor in Fayette County (KY) District Court. [ECF No. 42-22.] The district court entered an agreed order dismissing the proceeding on December 3, 2020, after Debtor "represented to the Court . . . that it did not object to [Bond Street] taking possession of the" Property and had returned the keys to Bond Street. [ECF No. 42-23.]

In the meantime, Debtor filed a lawsuit in the Fayette County (KY) Circuit Court against, *inter alia*, Bond Street alleging Debtor was not responsible for its failure to pay rent and Bond Street had breached the Lease Agreements. Bond Street filed an Answer and asserted Counterclaims against Debtor, including a claim for breach of the Lease Documents owing to Debtor's failure to pay rent. Bond Street also brought Guarantors into the case to enforce the Guaranty. The circuit court entered an order summarily dismissing Debtor's claims against Bond Street on July 26, 2021. On September 16, 2021, the court granted Bond Street a

summary judgment as to liability on its claims against (a) Debtor for breach of the Lease Documents, and (b) Guarantors seeking enforcement of the Guaranty. A trial on damages was scheduled.

Before that trial commenced, Debtor filed a petition for relief under chapter 11 and removed the circuit court litigation to this Court. The damages due to Bond Street remain in dispute. After this Court set an evidentiary hearing to determine the damages, Bond Street filed the Motion. The Motion states the damages to which Bond Street is entitled can be decided as a matter of law—requiring only a calculation based on the Lease Documents and the Guaranty. Bond Street argues neither Debtor nor Guarantors may assert the affirmative defense that Bond Street failed to mitigate its damages based on the terms of the Lease Documents and the Guaranty, respectively. Conversely, Debtor and Guarantors argue a summary judgment would be inappropriate because they can assert a mitigation defense, and disputed issues of material fact exist regarding Bond Street's conduct and how to calculate its damages.

## II.   Analysis.

### A.   Jurisdiction.

This Court has jurisdiction over this proceeding removed from the Fayette Circuit Court. 28 U.S.C. §§ 1334, 1452. Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### B.   Standard of Review.

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (made applicable to this proceeding by FED. R. BANKR. P. 7056 and 9014(c)). The movant carries the burden to show there are no genuine issues of material fact. *Matsushita Elec. Indus. Co., Ltd. v.*

4

*Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *see also Spradlin v. East Coast Miner, LLC (In re Licking River Mining, LLC),* 603 B.R. 336, 352 (Bankr. E.D. Ky. 2019), as amended (July 19, 2019) (stating the movant has the burden "to make a *prima facie* showing that it is entitled to summary judgment." (citation omitted)).  Genuine issues of material fact exist when parties dispute "facts that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court must view the evidence and all permissible inferences therefrom in the light most favorable to the non-movant.  *Id.*

A court may grant a summary judgment on an affirmative defense.  *See, e.g.*, *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 Fed. App'x 333, 337 (6th Cir. 2017) ("We can and do resolve affirmative defenses at the summary judgment stage.").  A party asserting an affirmative defense "has the burden to show that it is entitled to the defense."  *Id*.

      **C.**      **Bond Street had no duty to mitigate its damages.**

Debtor and Guarantors contend the Motion should be denied for two reasons.  First, they argue the Fayette Circuit Court already ruled against Bond Street on this issue.  Second, they contend Kentucky law imposes a duty on Bond Street to mitigate its damages by re-letting the Property after Debtor vacated.  Neither argument has merit.

      **1.**      **The Fayette Circuit Court's interlocutory rulings are neither binding nor conclusive.**

Debtor and Guarantors contend the Fayette Circuit Court twice considered and rejected Bond Street's argument that mitigation of damages is not an available affirmative defense to Bond Street's claims.  The Response quotes from the transcript of a hearing on September 10, 2021, in which the court referred to the availability of mitigation as "a factual determination." [Response at 19; Exh. 42-42 at 20-24.]  The Response also cites the order entered after that hearing in which the court granted Bond Street's motion for summary judgment on liability

5

under the Lease Documents and the Guaranty but held "[a]djudication of the amount of damages, if any, to be awarded Bond Street upon the judgments entered herein shall occur by subsequent adjudication by the trier of facts." [ECF No. 42-43.] In addition, the Response discusses Bond Street's second attempt in the circuit court to obtain a ruling it did not have to mitigate damages, attaching both Bond Street's motion seeking that determination and the court's March 15, 2023 order denying the motion. [ECF Nos. 42-44, 42-45.] That order states "[g]enuine issues of material fact exist on this issue" and quotes the language in the September 10, 2021 order stating a factfinder would determine damages. [ECF No. 42-45.]

The orders denying Bond Street's circuit court motions were interlocutory and are non-binding. "Until a final judgment is entered, all rulings by a court are interlocutory, and subject to revision." *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats, Inc.*, 424 S.W.3d 902, 909 (Ky. 2014) (citing KY. R. CIV. P. 54.02(1) ("[A]ny order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.")); *see also Louisville Trust Co. v. Smith*, 295 F.2d 107, 108 (6th Cir. 1961) (stating an interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all of the claims.").

Moreover, the circuit court denied relief to Bond Street summarily. Neither order discusses the pertinent terms of the Lease Documents or the Guaranty, contains any analysis of the parties' legal arguments on the mitigation defense, cites any legal authority on the mitigation issue, or even affirmatively states the law and facts do not support Bond Street's

6

position.  Accordingly, the circuit court's orders are neither binding nor persuasive regarding the availability of mitigation as a defense here.[3]

>     **2.     The Court will enforce the Lease Documents and the Guaranty as written, which bar Debtor and Guarantors from raising a failure to mitigate as an affirmative defense to Bond Street's damages claim.**

Bond Street argues the Lease Documents preclude Debtor from raising Bond Street's purported failure to mitigate its damages as an affirmative defense.  To show no genuine dispute of material fact exists on this issue, Bond Street cites specific evidence: the terms of the parties' executed contract.  The two relevant provisions of the Lease Agreement on this issue state:

> *22.2 Landlord's Remedies.*  Upon the occurrence of any event of default by Tenant, Landlord shall have, in addition to any other remedies available to Landlord at law or in equity (all of which shall be cumulative to the greatest extent permitted by law), the option to pursue any one or more of the following remedies without waiving such event of default: …
>
> (b) Terminate this Lease upon written notice to Tenant, in which event Landlord shall have the right to re-enter the Premises, take possession thereof and remove all persons and property therefrom, all without resort to legal process and without being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby and without being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby; and/or
>
> (c) <u>Without terminating this Lease, enter upon and take possession of the Premises and expel or remove Tenant, without being liable for prosecution or any claim for damages therefor, and, if Landlord so elects, make such alterations and repairs as, in Landlord's judgment, may be necessary to re-let the Premises, and relet the Premises or any part thereof in accordance with Section 22.3.</u>
>
> *22.3 Tenant's Continuing Obligation to Pay Rent.*  Notwithstanding any termination of this Lease or termination of Tenant's rights to possession, whether by summary proceedings or otherwise, Tenant shall pay and be liable for (on the days originally fixed herein for payment thereof) all Rent as if this Lease had not been terminated, whether the Premises are relet or remain vacant in whole or in part.  If the Premises are relet by Landlord, <u>provided that Landlord shall have no

---

[3] As to the September 2021 hearing transcript, which is not incorporated by reference into the September 10, 2021 order, a trial court "speaks only through written orders entered upon the official record" and "any findings of fact and conclusions of law made orally by the circuit court at an evidentiary hearing cannot be considered . . . unless specifically incorporated into a written and properly entered order." *Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. Ct. App. 2010).  The circuit court's colloquy with counsel at the September 2021 hearing also lacks utility.

7

> <u>obligation to attempt to re-let the Premises</u>, Tenant shall be entitled to a credit in the net sum of Rent received by Landlord in such reletting after deduction of all reasonable expenses incurred in reletting the Premises and in collecting such Rent, but Landlord may apply the rent from such reletting first to the payment of Landlord's reasonable expenses, including, but not limited to, attorney fees incurred, expenses attributable to reletting, repairs, brokerage fees, subdividing, renovation or alteration of the Premises and then to the payment of Rent and other sums due from Tenant hereunder, and Tenant shall remain liable for any deficiency thereof.

[Lease Agreement ¶¶ 22.2, 22.3 (emphasis added).] The parties did not alter these provisions in the later-executed Lease Documents.

It is undisputed that Bond Street did not elect to "[t]erminate this Lease" by sending Debtor a notice of termination in accordance with Paragraph 22.2(b). Debtor's failure to pay also did not terminate the Lease Agreement. *Estes v. Gatliff*, 163 S.W.2d 273, 276 (Ky. 1942) (stating "absen[t] a provision to that effect in the contract or a declaration of a statute, the nonpayment of rent does not operate as a forfeiture of the lease" under Kentucky law). Instead, Bond Street exercised its rights under Paragraph 22.2(c) by filing the forcible detainer complaint and taking possession from Debtor. It seeks to recover rent owed under Paragraph 22.3 as Paragraph 22.2(c) permits.

As to the Guaranty, it states "Guarantors waive presentment and demand for payment, notice of non-payment or non-performance… and all guarantors' defenses generally." [Guaranty at 1.] It also states:

> The Guaranteed Obligations are unconditional, and Guarantors acknowledge and agree that the Guaranteed Obligations and this Guaranty will remain in full force and effect without regard to: (a) any defense, set-off, counterclaim or termination by reason of the invalidity, illegality or unenforceability of the Leases or the failure of Landlord to assert any claim or demand against Tenant under the Leases or to enforce the Leases or any right or remedy available to Landlord under the Leases . . . . Guarantors assume full responsibility for . . . Tenant's performance under the Leases.

8

[*Id*. at 1-2.] The Guaranty expressly waives "any defense" and "all [G]uarantors' defenses generally" to enforcement.

Debtor and Guarantors do not challenge the terms or applicability of these documents or contend they are ambiguous. Instead, they contend Kentucky law supersedes them. The Response cites authority stating a party seeking breach of contract damages, including the breach of a lease, has a duty to mitigate its damages under Kentucky law. [Response at 24-29 (citing *Deskins v. Estep*, 314 S.W.3d 300 (Ky. Ct. App. 2010); *AnyConnect US, LLC v. Williamsburg Place, LLC*, 636 S.W.3d 556 (Ky. Ct. App. 2021); *Jordon v. Nickell*, 253 S.W.2d 237 (Ky. 1952); *Nohr v. Hall's Rentals, LLC*, 2011-CA-000646-MR, 2013 WL 462004 (Ky. Ct. App. Feb. 8, 2013) (unpublished)).]

These cases have a pivotal shortcoming that undermines Debtor and Guarantors' argument: none of these cases involved (a) a lease in which the parties expressly agreed the landlord had no obligation to re-let the space to mitigate its damages in the event the tenant vacated the space before the end of the lease term, or (b) a guaranty that expressly waived the guarantor's right to assert affirmative defenses to enforcement. Thus, these cases neither recognize nor reconcile specific and fundamental tenets of Kentucky contract law. First, "[i]n the absence of ambiguity a written instrument will be strictly enforced according to its terms." *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965). Second, Kentucky "has long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 2017 Ky. LEXIS 570, at *34-35 (Ky. Dec. 14, 2017) (citing, *inter alia*, *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954) (explaining that contracts should not "be set aside lightly" given that "right of private contract is no small part of the liberty of the citizen[.]")). And third, courts routinely enforce arm's-length

9

agreements between sophisticated parties, and even will enforce terms that might violate a public policy if the contracting parties have equal bargaining power. *Cumberland Valley Constrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 650-51 (Ky. 2007).

The pertinent terms of these written agreements are unambiguous. The paragraphs of the Lease Agreement quoted above plainly state Bond Street had no duty to mitigate its damages by re-letting the Property, and Debtor suggests no other way in which Bond Street could or should have mitigated its damages. Further, in the Guaranty—which Guarantors signed when they were members of Debtor, the tenant, and (at least) Royce Pulliam was a member of One Venue, LLC, the landlord—Guarantors expressly waived any defenses they could conceivably raise to enforcement and affirmed the "Guaranteed Obligations are unconditional." Debtor does not contend the Lease Agreement's terms were unduly favorable to the landlord, nor is there any suggestion of unequal bargaining power.

The Court will enforce the Lease Agreement and Guaranty as written. Debtor and Guarantors' affirmative defense fails as a matter of law. Bond Street is entitled to a summary judgment precluding Debtor and Guarantors from raising Bond Street's failure to mitigate its damages as an affirmative defense.

  **D.**  **Bond Street is entitled to damages from Debtor and Guarantors.**

    **1.**  **Damages due to Bond Street from Debtor under the Lease Documents.**

As relates to damages, Debtor incorrectly avers its obligations to Bond Street terminated on December 3, 2020, when the Fayette District Court entered the parties' agreed order dismissing the forcible detainer action. As reviewed above, the Lease Agreement states that, upon the tenant's default, the landlord may either provide notice of termination of the lease or, alternatively, take possession *without* terminating the lease. [Lease Agreement ¶ 22.2(b), (c).]

10

Bond Street did not elect to terminate the Lease Agreement, it merely took possession as permitted under Paragraph 22.2(c). This Court will enforce the parties' agreement as the law requires. *Mounts*, 388 S.W.2d at 119.

As to the calculation of damages due to Bond Street under the Lease Documents, to satisfy its obligation to prove its damages for breach of the lease with reasonable certainty, Bond Street tendered an Affidavit from Paula Carson, Bond Street's Lease Administrator, who maintained Bond Street's records related to its claim. [ECF No. 23-3.] At the Court's direction, Bond Street also filed a supplemental Affidavit from Ms. Carson that contains more detail as to how Bond Street calculated the damages due for breach of the Lease Documents. [ECF No. 38.] Bond Street contends Debtor owes $1,565,663.19 under the Lease Documents ($953,220.64 in "Base Rent," $347,511.88 in "Additional Rent," $139,340.72 in interest, and $254,089.95 in attorneys' fees/costs). [*Id.* ¶ 11.] The Response, filed after Bond Street submitted Ms. Carson's supplemental Affidavit, disputes these figures and contends a genuine issue of material fact exists as to how to calculate damages.

The Court does not accept Bond Street's calculation of its damages in full but finds no genuine dispute of material fact exists regarding how to calculate damages under the Lease Documents. While Debtor raises questions about Bond Street's internal bookkeeping of amounts due from Debtor after it vacated the Property, the questions do not establish a genuine dispute of material fact exists that precludes entry of a summary judgment. The Lease Documents govern the issue and are unambiguous. They require Bond Street to pay rent and other charges for the duration of the lease term after it vacated the Property. [Lease Agreement ¶ 22.3.] Calculating the amount due only requires following the plain language of the Lease Documents.

The Lease Agreement states Debtor (as tenant) must pay "Base Rent" each month, and for the period at issue Base Rent is identified on Schedule 1 of the Second Amendment to the Lease Agreement. While Bond Street contends Debtor owes Base Rent from March 2020 through January 2024 in the amount of $953,220.64 [ECF No. 38 ¶ 11], Bond Street unconditionally agreed to abate (i.e., waive) Debtor's Base Rent obligation for March 2020 in the Rent Deferment Agreement. Accordingly, Bond Street's calculation of Base Rent should be reduced by $20,480.99, the Base Rent it claimed for March 2020.

Debtor also agreed to pay "Additional Rent" each month, consisting of its pro rata share of taxes, insurance costs and operating expenses. Bond Street contends Debtor owes Additional Rent for March 2020, and then August 2020 through January 2024, totaling $347,511.88. [*Id.*] As with Base Rent for March 2020, Bond Street unconditionally agreed to abate Additional Rent for March 2020. Bond Street's claim for Additional Rent should be reduced by $7,893.59, the monthly charge for Additional Rent in March 2020. While Debtor contests the amount sought for Additional Rent, Debtor failed to offer evidence that Bond Street miscalculated the monthly amount due, and thus did not show a genuine dispute of material fact exists.

Next, Bond Street requests interest at 6% on the amount due from Debtor for Base Rent and Additional Rent. [*Id.* ¶ 18.][4] Bond Street's interest calculation must be reduced to reflect it is not entitled to Base Rent or Additional Rent for March 2020, and thus may not collect interest on those missed payments.

---

[4] Bond Street seeks interest from Debtor at the rate of 6% to be consistent with the Guaranty, rather than 8% as the legal rate of interest under KY. REV. STAT. 360.010. [Lease Agreement ¶¶ 17, 18; Guaranty at 2 (stating "Guarantors agree to pay on demand all costs and expenses, including court costs and attorneys' fees, incurred or paid by Landlord in enforcing this Guaranty or collecting any sums due hereunder, together with interest on all such amounts at the rate of six percent (6%) per annum.").]

Bond Street also contends it is entitled to recover its costs and reasonable attorneys' fees incurred related to Debtor's breach of the Lease Documents and contends the amount due is $254,089.95 based on invoices from Bond Street's law firm (Wyatt, Tarrant & Combs, LLP) from October 12, 2020, through January 12, 2024, and invoices from "Abrams LawWorks LLC," an entity based in Charleston, South Carolina that apparently participated in the litigation in some undescribed way. [*Id.* ¶ 16; ECF No. 38-7]. Debtor does not dispute Bond Street's right to recover its costs and reasonable attorneys' fees under the Lease Documents but challenges the reasonableness of the fees.

A claimant must prove their damages for breach of contract with reasonable certainty. *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401 (Ky. 1985) (citing Restatement (Second) of Contracts § 352 (1981)). Bond Street has not satisfied its burden. It has not offered any evidence as to the reasonableness of the requested fees or provided a lodestar analysis. *PNC Bank, N.A. v. Legal Advocacy, P.C.*, 841 Fed. Appx. 755, 759 (6th Cir. 2020) ("When determining what constitutes a 'reasonable' fee award [in a breach of contract case], we direct district courts to begin by calculating the applicant's 'lodestar' figure."). Instead, it merely filed invoices in the record and contended the total due on those invoices should be paid. This does not suffice.

Finally, Bond Street reduced the damages amount due from Debtor based upon the $128,500 it received from its new tenant in the Property. Debtor contends the credit should be larger because the

> "credit" number of $128,500 does not give credit for the "Tenant Improvements" rent credits that Bond Street has given [the new tenant] monthly (totaling no less than $76,000) so that Bond Street did not have to come out of pocket to fund those improvements up front. But those "Tenant Improvement" rent credits make up part of the $20,000 per month gross rent Bond Street is due under the [new] Lease and should be factored into the calculation of what credits are

13

applied to lower the amount due, if any, by [Debtor] to Bond Street under the Lease.

[Response at 32.] This is incorrect. The Lease Agreement states: "If the Premises are relet by Landlord, . . . Tenant shall be entitled to a credit in the net sum of Rent received by Landlord in such reletting after deduction of all reasonable expenses incurred in reletting the Premises and in collecting such Rent[.]" [Lease Agreement ¶ 22.3.] Rent, a defined term in the Lease Agreement, "collectively means the Base Rent and all Additional Rent." [*Id.* ¶ 2(j).] Neither Base Rent nor Additional Rent are defined in the Lease Agreement to include "Tenant Improvement rent credits," nor would such rent credits constitute a "sum of Rent received by" Bond Street. Debtor is receiving full credit for all sums Bond Street received as Rent from its new tenant.

## 2.     Damages due to Bond Street from Guarantors under the Guaranty.

Guarantors contend the amount due under the Guaranty should be limited because Bond Street did not provide them with notice required under the Guaranty. The Guaranty states: "If Tenant at any time fails to make any payment of the Guaranteed Obligations when due, Guarantors will, upon written notice from Landlord and without further demand, pay the same in the same manner and to the same extent as is required of Tenant within five (5) business days of Guarantors' receipt of such written notice[.]" [Guaranty at 1.] The Court disagrees with Guarantors' interpretation of this language, which clearly permits Bond Street to demand Guarantors quickly satisfy a missed payment from Debtor. Guarantors guaranteed all payments of Base Rent due from Debtor for a 36-month period. The Guaranty expressly states Guarantors' obligation to pay is "unconditional" and Guarantors waived "presentment and demand for payment." [*Id.*] The notice language does not require Bond Street to send a

14

demand every time Debtor missed a payment if it wished to collect that payment in litigation against Guarantors.

As to the calculation of the amount due under the Guaranty, Guarantors "guarantee[d] to Landlord all payments of 'Base Rent' (as that term is defined in the Leases) due from Tenant to Landlord during the period of thirty-six (36) months commencing on the 'Closing Date' . . . ('Guaranteed Obligations')." [*Id.*] There is no dispute the "Closing Date" was July 11, 2019, such that the 36-month period ran from July 11, 2019, to July 11, 2022. The Guaranty also states: "Guarantors agree to pay on demand all costs and expenses, including court costs and attorneys' fees, incurred or paid by Landlord in enforcing this Guaranty or collecting any sums due hereunder, together with interest on all such amounts at the rate of six percent (6%) per annum." [*Id.* at 2.]

Bond Street contends Guarantors owe $852,620.52 under the Guaranty ($563,694.18 in missed "Base Rent" payments from Debtor in this period, $34,836.39 in interest, and $254,089.95 in attorneys' fees/costs). [ECF No. 38 ¶ 25.] The Court concludes none of these figures are correct, but the amount due can be calculated by correctly applying the terms of the Guaranty and the Lease Documents.

First, because Bond Street abated the $20,480.99 due from Debtor for Base Rent in March 2020 under the Rent Deferment Agreement, Guarantors do not owe that sum under the Guaranty, either. Once Bond Street waived the March 2020 Base Rent payment, it no longer was "due" from Tenant (i.e., Debtor) to Landlord (i.e., Bond Street) in the 36-month period. In addition, under the Rent Deferment Agreement, Bond Street agreed Debtor would timely pay half its Base Rent for the months April through July of 2020 (which it did) and the other half (totaling $40,961.98) would be paid in 24 monthly installments starting in January 2021. The

15

Rent Deferment Agreement altered the amount due to Bond Street from Debtor for Base Rent within the 36-month period of the Guaranty, and provided a portion thereof was deferred and would not come due until after July 11, 2022. Bond Street may only collect from Guarantors the unpaid amount of Base Rent due from Debtor to Bond Street until July 11, 2022. Bond Street must adjust its demand for Base Rent accordingly.

Second, because Bond Street miscalculated the amount due from Guarantors for Base Rent, it also must recalculate the amount of interest due under the Guaranty.

Third, Bond Street misconstrues its entitlement to recover legal fees under the Guaranty. The Guaranty does not state Bond Street may collect from the Guarantors all amounts due from Debtor in enforcing the Lease Documents, but rather "all costs and expenses, including court costs and attorneys' fees, incurred or paid by Landlord <u>in enforcing this Guaranty or collecting any sums due hereunder</u>[.]" [Guaranty at 2 (emphasis added).] The record does not establish the amount of legal fees and court costs Bond Street incurred in enforcing the Guaranty or attempting to collect thereunder.

### III.   Conclusion.

For these reasons, it is ORDERED that:

1. Bond Street's Motion for a determination that Debtor and Guarantors may not invoke failure to mitigate damages as an affirmative defense is GRANTED.

2. The parties shall meet and confer within seven days of the entry of this opinion to determine whether they can reach agreement on the amounts due under the Lease Documents and the Guaranty given the rulings made herein.

3. Unless the parties reach an agreement,

      a.      Within 14 days of the entry of this opinion, Bond Street shall (1) provide a new calculation of damages for breach of the Lease Documents (adjusting the amounts due from Debtor for Base Rent, Additional Rent, and interest as indicated), (2) provide a new calculation of damages for breach of the Guaranty (adjusting the amounts due from Guarantors for Base Rent and interest as indicated), and (3) file additional evidence to support its request for reasonable attorneys' fees and court costs under the Lease Documents and the Guaranty.

      b.      Within seven days of Bond Street filing all the materials required above, Debtor and Guarantors shall supplement the record with any remaining objections to the damages calculations provided, along with any evidence they deem necessary solely on the issue of legal fees.

      c.      Upon the submission of all required materials, the Court will review the record and determine if a further hearing is required.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Wednesday, February 7, 2024
(tnw)