# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

| | |
|---|---|
| **IN RE** | |
| **LEXFIT, LLC** | **CASE NO. 23-51167** |
| **DEBTOR** | **CHAPTER 11—SUBCHAPTER V** |
| **LEXFIT, LLC,** *et al.* | **PLAINTIFFS** |
| **V.** | **ADV. NO. 23-5052** |
| **BOND STREET FUND 20, LLC,** *et al.* | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER LIQUIDATING DAMAGES ON BOND STREET'S CLAIMS AGAINST DEBTOR AND GUARANTORS

The Court entered a Memorandum Opinion and Order Partially Granting a Motion for Summary Judgment filed by Defendant Bond Street Fund 20, LLC on aspects of its breach of contract claim against Plaintiff/Debtor LexFit, LLC and its claim against Plaintiffs Royce and Tomi Anne Pulliam under a Guaranty. [ECF No. 47 ("Opinion").[1]] Thereafter, as ordered, the parties supplemented the record with evidence and legal arguments concerning how to determine Bond Street's damages, costs, and attorneys' fees under the Lease Documents and the Guaranty. [ECF Nos. 53, 54, 55, 56]. Upon review of these filings, the Court denied a summary judgment to Bond Street based on its calculations of amounts due. [ECF No. 57.] The Court also advised it would consider assessing damages based on the record under Civil Rule 56(f)(3), incorporated under Bankruptcy Rule 7056, and provided the parties an opportunity to object.[2] No objections were filed.

---

[1] Terms defined in the Opinion have the same meaning when used herein.

[2] References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule," and references to the Federal Rules of Civil Procedure appear as "Civil Rule."

I.   **Standard of Review for a Summary Judgment Considered Under Civil Rule 56(f)(3).**

Civil Rule 56(f)(3) permits a court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f)(3). "The emphasis on 'notice' and an 'opportunity to respond' ensures that a party can present evidence showing a genuine issue of material fact to defeat summary judgment." *Jones v. State Farm Mut. Auto. Ins. Co.*, 653 Fed. App'x 598, 608 (10th Cir. 2016) (citation omitted); *see also Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 892 (10th Cir. 1997) (stating a court "may grant summary judgment sua sponte 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'") (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

The parties and the Court agree that a fully developed evidentiary record exists on the issues addressed herein. Bond Street is entitled to a judgment assessing damages owed under the Lease Documents and the Guaranty, including attorneys' fees and court costs.

II.  **Calculation of Base Rent, Additional Rent, and Interest Due to Bond Street Under the Lease Documents and the Guaranty.**

Based on the rulings in the Opinion, Bond Street filed a Second Supplemental Affidavit of Paula Carson, a Lease Administrator for Bond Street's managing entity, offering Bond Street's calculation of amounts due from Debtor and Guarantors for Base Rent and interest under the Lease Documents and the Guaranty, and from Debtor for Additional Rent under the Lease Documents. [ECF No. 53-1 (the "Carson Affidavit").] Bond Street must prove its damages for breach of contract with reasonable certainty. *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401 (Ky. 1985) (citing Restatement (Second) of Contracts § 352 (1981)).

2

> A.   **Bond Street is entitled to a judgment against Debtor under the Lease Documents in the amount of $1,280,305.10 for Base Rent, Additional Rent, and Interest as of January 12, 2024.**

The Carson Affidavit calculates the following figures as amounts due from Debtor to Bond Street under the Lease Documents: (a) Base Rent from April 2020 through January 2024 totaling $932,739.65; (b) Additional Rent from April 2020 through January 2024 totaling $339,618.29; (c) a credit in the amount of $128,500.00 as the net sum of rent received by Bond Street in re-letting the Property; and (d) interest on Base Rent and Additional Rent through January 12, 2024, totaling $136,447.16. The sum of Base Rent, Additional Rent, and interest, less the re-letting credit, is $1,280,305.10.

Debtor objected to the damages calculations Bond Street prepared before the Court entered the Opinion. [ECF No. 42 at 29-35, 42.] In the Opinion, the Court permitted Debtor to supplement the record with any objections it had to Bond Street's updated damages calculations. [Opinion at 17.] Debtor filed a response challenging two aspects of Bond Street's updated calculations in the Carson Affidavit. [ECF No. 55.]

First, Debtor argues it should receive a "provisional credit" of $60,250.00 as outstanding rent owed to Bond Street from the new tenant at the Property. [*Id*. at 2.] The Court disagrees. The Lease Agreement states: "If the Premises are relet by Landlord, . . . Tenant shall be entitled to a credit in the net sum of Rent *received by Landlord* in such reletting after deduction of all reasonable expenses incurred in reletting the Premises and in collecting such Rent[.]" [Lease Agreement ¶ 22.3 (emphasis added).] The evidence in the record is that Bond Street has not yet *received* this $60,250 from the new tenant. Debtor is not entitled to a provisional credit.

Second, Debtor avers, without explanation, that "the Lease was rejected by operation of law as of January 25, 2024. See 11 U.S.C. § 365(d)(4)(A)(i)." [ECF No. 55 at 2.] This statement is confusing insofar as the Fayette Circuit Court held Debtor breached the Lease

3

Documents prepetition, and a rejection of an unexpired lease by operation of law constitutes a breach of the lease as of the petition date, not a termination of the lease. 11 U.S.C. § 365(g)(1); *see also In re Roberson*, No. 17-8041, 2019 U.S. App. LEXIS 16120, at *12 (B.A.P. 6th Cir. May 30, 2019) ("rejection of an unexpired lease under § 365(g) creates a breach of the lease, not a termination."). Debtor does not explain how this statement and citation to the Bankruptcy Code affect Bond Street's entitlement to Base Rent, Additional Rent, and/or interest under the Lease Documents, and the Court will not speculate as to Debtor's argument. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (cleaned up).

The Carson Affidavit's calculation of damages for Base Rent, Additional Rent, and interest owed by Debtor to Bond Street stands unrebutted.

> **B.** **Bond Street is entitled to a judgment against Guarantors in the amount of $563,187.20 for Base Rent and Interest under the Guaranty.**

The Carson Affidavit calculates the following figures as the amounts due from Guarantors to Bond Street under the Guaranty: (a) Base Rent from April 2020 through July 2022 totaling $534,679.46; and (b) interest on Base Rent through July 11, 2022, totaling $28,507.74. Taken together, these figures amount to $563,187.20. Guarantors do not challenge the calculated figures for Base Rent and interest, leaving those amounts unrebutted. [ECF No. 56.[3]]

---

[3] Guarantors' response to the Court's notice of intent to proceed under Civil Rule 56(f)(3) included a wholly new legal argument concerning how to calculate interest under the Guaranty. [ECF No. 60 at 2-3.] This untimely argument—akin to a new argument offered in a reply brief or a motion for reconsideration—is deemed waived. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived."); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (objections raised for the first time in a reconsideration motion are deemed to have been waived).

      **C.    Guarantors' liability for Base Rent and Interest under the Guaranty is Joint and Several with Debtor's liability for Base Rent and Interest under the Lease Documents.**

Because Debtor defaulted under the Lease Documents, and Guarantors only guaranteed those defaults in part, Guarantors and Debtor are liable to Bond Street for differing amounts of Base Rent and interest. The Guaranty makes plain Bond Street may not collect and keep a Base Rent payment for the same month from both Debtor and Guarantors. [Guaranty at 1 ("If Tenant at any time fails to make any payment of the Guaranteed Obligations when due, Guarantors will, upon written notice from Landlord and without further demand, pay the same in the same manner and to the same extent as is required of Tenant within five (5) business days of Guarantors' receipt of such written notice, <u>provided, however</u>, that if Landlord subsequently receives from Tenant all or any portion of a Guaranteed Obligation actually paid by Guarantors pursuant to this Guaranty, Landlord shall refund such amount to Guarantors within five (5) business days.").]

Accordingly, Debtor and Guarantors are jointly and severally liable to Bond Street for the $563,187.20 in Base Rent from April 2020 through July 2022 and interest due through July 11, 2022. Debtor alone is liable to Bond Street for Additional Rent, for the excess amount of Base Rent, and additional interest due (through January 12, 2024), totaling $717,117.90.

**III.    Bond Street is Entitled to an Award of Reasonable Attorneys' Fees and Court Costs Under Fee-Shifting Provisions in the Guaranty and the Lease Documents.**

Bond Street contends Debtor and Guarantors are liable to pay its reasonable attorneys' fees under the Lease Documents and the Guaranty, respectively. Bond Street seeks attorneys' fees for work performed by attorneys practicing at Wyatt, Tarrant & Combs, LLP ("WTC") in Lexington, Kentucky, and for Russell S. Abrams, practicing at Abrams LawWorks, LLC based in Mt. Pleasant, South Carolina.

The Lease Documents and the Guaranty are governed under Kentucky law. In Kentucky, "[j]udicial review of a contract begins with examination of the plain language of the instrument. 'Generally, . . . in construing contracts courts endeavor to give effect to the parties' intent as expressed by the ordinary meaning of the language they employed.'" *Mostert v. Mostert Grp., LLC*, 606 S.W.3d 87, 91 (Ky. 2020) (quoting *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 105 (Ky. 2010)). A court should not rewrite the parties' contract. *Hensley v. Gadd*, 560 S.W.3d 516, 522 (Ky. 2018).

"Kentucky follows the 'American Rule' that 'with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her own attorneys' fees.'" *Adkins v. Chrysler Fin. Corp.*, 344 Fed. App'x 144, 147 (6th Cir. 2009) (quoting *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (alteration in original) (citation omitted)). The Guaranty and the Lease Agreement both contain fee-shifting provisions allowing Bond Street to recover its attorneys' fees under the circumstances; the plain language of each provision is analyzed separately below.

"In seeking an award of attorney's fees, the prevailing party bears the burden of proving that the amount sought is reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). In both the Sixth Circuit and in Kentucky courts, a strong presumption exists that a "lodestar" figure, arrived at by multiplying the number of hours reasonably expended by a reasonable hourly rate, represents a reasonable fee. *See*, *e.g.*, *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 435 (6th Cir. 2002); *Mid South Capital Partners, LP v. Adkins*, 626 S.W.3d 688, 691 (Ky. Ct. App. 2020). The Supreme Court outlined the lodestar process in *Hensley*:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a

6

reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley*, 461 U.S. at 433.

Courts also may consider other factors bearing on the reasonableness of a fee award, with no one factor being dispositive. *Paschal*, 297 F.3d at 435 (citing twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *Mid South*, 626 S.E.3d. at 691 (citing eight factors offered in *Axton v. Vance*, 269 S.W. 534, 536-37) (Ky. 1925)). Moreover, a court has discretion to adjust an award where a lawyer's time entries reflect "block billing" for work performed on multiple tasks in the same time entry, making it "impossible for the Court to determine the exact amount of non-compensable time included in the requested hours." *Miller v. Davis*, 267 F. Supp. 3d 961, 997 (E.D. Ky. 2017), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019).

A trial court adjudicating a fee award need not achieve a perfect result:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (citations omitted). While this Court has "substantial discretion in determining the amount of an attorney fee award," it must offer a "concise but clear explanation of [its] reasons for the fee award[.]" *Hensley*, 461 U.S. at 437.

As neither Guarantors nor Debtor argue the hourly rates charged by Bond Street's counsel in this litigation are unreasonable, no dispute exists as to this aspect of the lodestar analysis. But Guarantors and Debtor do challenge the "number of hours reasonably expended"

7

by WTC and Mr. Abrams, and Bond Street carries the burden to show the claimed number of hours is reasonable.

> **A.  Bond Street may not recover attorney's fees or costs for work performed by Mr. Abrams.**

The affidavit Mr. Abrams submitted to support Bond Street's request for payment of his fees states he spent 37.3 billable hours on the case.  [ECF No. 54-2 at ¶¶ 5-6.]  The affidavit does not discuss any specific costs Mr. Abrams incurred and billed to Bond Street.  Bond Street has not satisfied its burden to show the time Mr. Abrams spent on this matter as co-counsel or any costs he incurred were reasonable.

Mr. Abrams started working as Bond Street's outside general counsel, and thereby on this dispute, in June 2022.  [*Id*. at ¶¶ 2-3.]  By that time, Bond Street had been in state court litigation in Lexington, Kentucky with Debtor for well over a year, represented by multiple Lexington-based attorneys at WTC, an established regional law firm.  [ECF Nos. 54-1, 54-3 at 1-98.]  Mr. Abrams thus did not have (nor does his affidavit claim) a long-standing attorney-client relationship with Bond Street that warranted his involvement as out-of-state counsel in this case.  Mr. Abrams' affidavit does not assert he added legal skills to Bond Street's legal team for this case that WTC attorneys lacked.  The affidavit also does not advise Mr. Abrams ever had a leading role in representing Bond Street in this case; indeed, this Court did not know of his involvement until Bond Street sought to compel Debtor and Guarantors to pay his fees and costs.

Mr. Abrams' affidavit offers a conclusory statement that his time "as demonstrated by the detailed time entries provided, was reasonably spent supporting Bond Street and assisting Wyatt, Tarrant & Combs, LLP in this litigation."  [ECF No. 54-2 at ¶ 6.]  This conclusion is unsupported by evidence.  Neither Mr. Abrams' time records nor his affidavit establish it would be reasonable for Debtor and Guarantors to pay his fees.

**B.     Bond Street may recover $25,000.00 from Guarantors for legal fees incurred in enforcing the Guaranty.**

The Guaranty states: "Guarantors agree to pay on demand all costs and expenses, including court costs and attorneys' fees, incurred or paid by [Bond Street] in enforcing this Guaranty or collecting any sums due hereunder[.]" [Guaranty at 2.] Bond Street construes this to mean it may recover from Guarantors nearly all the legal fees and costs it incurred in connection with its dispute against Guarantors *and Debtor*. This is incorrect. As drafted, the Guaranty allows Bond Street to recover from Guarantors only its costs and attorneys' fees that fall in two specified buckets.

As to one bucket, Bond Street may recover from Guarantors its attorneys' fees and costs "in *enforcing this Guaranty*[.]" To "enforce" means "to give force or effect to (a law, etc.); to compel obedience to" or "[l]oosely, to compel a person to pay damages for not complying with (a contract)." BLACK'S LAW DICTIONARY (11th ed. 2019). As Guarantors are Bond Street's sole counterparties to the Guaranty, the Guaranty allows Bond Street to recover from Guarantors the attorneys' fees and court costs Bond Street incurred for attorney time spent compelling *Guarantors* to comply with *the Guaranty itself*.

The question presented is what amount of Bond Street's counsel's time was spent attempting to compel Guarantors to comply with the Guaranty. Bond Street made little effort to answer this question—even after the Court noted the Guaranty's pertinent language, stated Bond Street had misconstrued that language, and ordered Bond Street to file "additional evidence" to support its request for fees under the Guaranty. [Opinion at 16-17 ("The record does not establish the amount of legal fees and court costs Bond Street incurred in enforcing the Guaranty

9

or attempting to collect thereunder[.]").] Instead, Bond Street insists its attorneys, at virtually all times, attempted to enforce Bond Street's rights as against Debtor and Guarantors collectively.[4]

Guarantors' objection to Bond Street's updated fee request [ECF No. 56] is persuasive and aligns with the Court's view of the plain language used in the Guaranty and in WTC's billing records. Guarantors explain the history of the state court litigation between Debtor and Bond Street related to the Lease Documents. The litigation originally did not involve Guarantors; Bond Street added them to the case, even though they were not parties to the Lease Documents, to assert a separate claim against them under the Guaranty. Bond Street admits WTC lawyers did not bill their time for efforts to enforce the Guaranty separately from the time spent enforcing Bond Street's rights under the Lease Documents. [ECF No. 54 at 14.]

Guarantors correctly note Bond Street's lawyers at WTC billed their time pertaining to this litigation with Debtor and Guarantors to a billing number generally related to the Property. The WTC attorneys also entered time on that billing number for matters unconnected to the Fayette Circuit Case that, upon removal, became this adversary proceeding. Some time entries on that billing number appear to relate to a different piece of litigation between Bond Street and another Pulliam-related entity. Guarantors identify several examples of block billing and vague

---

[4] *See* ECF Nos. 23 at 12, 23-3 at ¶ 9; 23-5 at ¶ 11 (affidavits submitted with Bond Street's motion for summary judgment seeking $233,734.18 in legal fees from both Debtor and Guarantors); ECF No. 38 at ¶¶ 16, 19, 25 (affidavit supplementing Bond Street's motion for summary judgment seeking $254,089.95 in legal fees from both Debtor and Guarantors); ECF No. 44 at 9, 15 ("Bond Street actions at all times litigating this case relate to both its collection of the Lease and Guaranty."); ECF No. 53 at ¶¶ 9, 15 (affidavit filed after entry of the Opinion, seeking $254,089.95 in legal fees from Debtor and $240,567.45 in legal fees from Guarantors), ECF No. 54 at 7, 14-16 (brief filed after entry of the Opinion (a) stating "Bond Street believes that it is entitled to the reasonable attorneys' fees it has expended in this matter to collect on both the Lease Agreement and the Guaranty. As the Guaranty contemplates by allowing Bond Street to collect any amounts due and owing under the Guaranty, the amounts owed pursuant to both sets of agreements will naturally and necessarily overlap[,]" (b) stating "Bond Street did not separate out time entries focused specifically on the enforcement of the Lease Agreement from the enforcement of the Guaranty . . . in part, because—as the Guaranty language provides—the sums due and owing under the Guaranty directly correlate to the sums owed under the Lease Agreement[,]" and (3) identifying specific time entries totaling $13,522.50 as unrelated to enforcing the Guaranty).

language in WTC's billing records; it is impossible to discern from these time entries what tasks were performed to enforce the Guaranty or how much time they took.

Guarantors concede "[t]he billing records submitted by Bond Street do contain some entries that clearly reflect time spent only enforcing the Guaranty[,]" and identify those entries, resulting in billable time totaling $9,432.50. [ECF Nos. 56 at 8; 56-11.] These time entries are properly allocated in the first bucket. Moreover, it is beyond material dispute from a review of WTC's invoices that WTC attorneys spent additional time enforcing the Guaranty that is not reflected on Guarantors' summary because the time is included in block billing entries. Guarantors implicitly recognize that $9,432.50 does not compensate Bond Street fully for WTC's work performed to enforce the Guaranty insofar as Guarantors suggest the Court may allocate a percentage of the time in the block entries to such efforts. [ECF No. 56 at 20-23.]

As for the second bucket, Bond Street may recover from Guarantors its attorneys' fees and costs for "*collecting* any sums due *hereunder*[,]" *i.e.*, under the Guaranty. Collecting connotes engaging in efforts to recover a sum certain. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "costs of collection" as "[e]xpenses incurred in receiving payment of a note; esp., attorney's fees incurred in the effort to collect a note" and "collectability" as "[t]he ability of a judgment creditor to make a judgment debtor pay the amount of the judgment; the degree to which a judgment can be satisfied through collection efforts against the judgment debtor.").

Bond Street's attorneys have spent no time thus far *collecting* sums due under the Guaranty. This opinion liquidates the amounts due to Bond Street from Guarantors under the Guaranty and will result in a money judgment for a sum certain. Bond Street cannot attempt to collect that sum certain from Guarantors under the Guaranty until after this opinion is entered.

Based on the evidence in the record, and giving due consideration to the parties' legal arguments, Bond Street is entitled to recover $25,000.00 from Guarantors in billable time spent by WTC attorneys for their efforts to enforce the Guaranty. As Bond Street identifies no evidence as to any costs Bond Street incurred to enforce the Guaranty, no costs will be awarded against Guarantors.

      C.      **Bond Street may recover $210,000.00 from Debtor for legal fees and costs incurred in enforcing its rights and remedies under the Lease Documents.**

The Lease Agreement has a broader fee-shifting provision than the Guaranty. It states:

> Upon an event of default by Tenant [*i.e.*, Debtor], Tenant will be liable to Landlord [*i.e.*, Bond Street] for all court costs and reasonable attorney fees incurred by Landlord in enforcing its rights and remedies under this Lease, including, without limitation, all costs and fees incurred in connection with obtaining possession of the Premises or in the enforcement of any covenant, condition or agreement herein contained, whether through legal proceedings or otherwise and whether or not any such legal proceedings are prosecuted to a final judgment.

[Lease Agreement ¶ 22.4.] The Fayette Circuit Court held Debtor defaulted under the Lease Agreement, triggering Debtor's obligation to pay Bond Street's reasonable attorneys' fees under this provision.

Debtor raises a few arguments in opposition to Bond Street's updated attorneys' fee demand. Its first argument, that Mr. Abrams' fees and costs should not be awarded, already is resolved in Debtor's favor. Bond Street's demand will be reduced by the amount sought for Mr. Abrams' fees and costs.

Next, in a mirror image to Guarantors' argument, Debtor contends it is liable to pay Bond Street's fees and costs incurred "in enforcing its rights and remedies under this Lease" only—and not any amounts for attorneys' fees related to enforcement of the Guaranty. This argument has merit based on the plain language of the Lease Agreement; the Guaranty is not a "covenant, condition or agreement" contained therein. As discussed above, $25,000.00 is a reasonable

12

award for work performed by Bond Street's counsel at WTC attributable to enforcing the Guaranty, and Bond Street's demand for fees against Debtor will be reduced by this amount.

Finally, Debtor contends Bond Street's fee demand should be lowered owing to block billing by WTC attorneys and time entries unrelated to this litigation. Debtor offers "a selection" of such time entries and costs. [ECF No. 55-1.] Upon review of the identified time entries, Debtor's argument is persuasive: some of the questioned entries appear unrelated to the instant litigation; some involve block billing where a portion of the attorney time spent appears unrelated to the instant litigation; and some are vague, making it difficult to determine whether they relate to the instant litigation—particularly given that WTC attorneys billed time to this client/matter number for tasks unrelated to the instant litigation. The Court also noticed similar vague or block-billed entries on WTC's invoices that Debtor did not highlight. The unrelated time appears to comprise about 5-10% of the overall WTC attorney time for which Bond Street seeks reimbursement.

Bond Street's demand for an award of legal fees and costs against Debtor in the amount of $254,089.95 will be reduced to account for these three billing concerns. But other factors the Court may consider in rendering a fee award include the degree of success obtained, the ability of counsel and the skill needed perform the work, and the amounts involved in the litigation. *Johnson*, 488 F.2d at 717-19. To that end, the record reflects WTC attorneys, starting at the onset of the Covid-19 pandemic in 2020 and continuing to date, skillfully represented Bond Street against Debtor (a) in a state court forcible detainer action, (b) in separate, protracted state court litigation in which they obtained rulings on dispositive motions in Bond Street's favor on multiple claims by and against Bond Street, and (c) in the bankruptcy court—in which this Court found in Bond Street's favor on the availability of mitigation as an affirmative defense, a

significant victory. The damages awarded against Debtor exclusive of attorneys' fees and costs exceed $1 million, constituting a highly successful litigation outcome under the circumstances.

Bond Street is entitled to recover $210,000.00 from Debtor in billable time spent and court costs incurred by WTC attorneys in enforcing the Lease Documents.

**IV.     Conclusion.**

For these reasons, it is ORDERED a summary judgment under Civil Rule 56(f)(3) will be entered in favor of Bond Street as follows:

1. against Debtor and Guarantors, jointly and severally, in the amount of $563,187.20 for Base Rent from April 2020 through July 2022, and interest through July 11, 2022, due under the Lease Documents and the Guaranty;

2. against Debtor in the amount of $717,117.90 for Base Rent and Additional Rent from August 2022 through January 2024, and interest through January 12, 2024, due under the Lease Documents;

3. against Guarantors in the amount of $25,000.00 for attorneys' fees due under the Guaranty through January 12, 2024; and

4. against Debtor in the amount of $210,000.00 for attorneys' fees and costs due under the Lease Documents through January 12, 2024.

In conjunction with the Agreed Order entered on March 21, 2024 [ECF No. 72], which resolved all other asserted claims that had been pending in this case, this decision brings the protracted litigation between these parties to a close. A separate judgment will be entered concurrently with this opinion.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, March 22, 2024**
  (tnw)